Per Curiam :
This case was referred pursuant to Rule 45 to Wilson Cowen, a trial commissioner of this court, with directions to make findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed March 5, 1962. Briefs were filed by the parties, exceptions to. the commissioner’s findings of fact and recommended conclusion of law were filed by the plaintiffs and the cases were submitted to the court on oral argument of counsel. Since the court is in agreement with the findings and recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in these cases. Plaintiffs are entitled to recover and judgment is entered for plaintiffs in each case with the amount of recovery to be determined pursuant to Rule 38 (c).
OPINION OP COMMISSIONER
These three suits, which were consolidated for trial because they involve the same facts and the same legal issue, were brought to recover alleged overpayment .of income taxes for the calendar years 1955 and 1956.
The plaintiffs and Mrs. Genevieve G. Taylor were stockholders in the W. F. Taylor Company, Inc., which owned the Free State Plantation (hereinafter referred to as the plantation) and other assets.
On December 30, 1936, the corporation was liquidated and thereupon one-half of the assets were distributed to the plaintiffs and one-half' of the assets were distributed to Mrs. Taylor. The liabilities of the corporation, aggregating $145,766.45, were assumed pro rata by the plaintiffs and Mrs. Taylor.
As a result of the liquidation, the shareholders paid a capital gains tax in accordance with section 115(c) of the Revenue Act of 1936, 49 Stat. 1648. The tax was computed .on the difference between the shareholders’ basis of their stock in the corporation and the market value of the assets received, less the assumed liabilities of $145,766.45, all as determined by the Commissioner of Internal Revenue. Thus, the amount of the corporate liabilities assumed by the plaintiffs and Mrs. Taylor served in each case to decrease the amount of gain *420 they realized on the liquidation and therefore the amount of their individual income tax liabilities.
When the Taylor Company was liquidated, the plantation had a fair market value of $96,494, which was also the value indicated on the company’s books.
In 1938 the plaintiffs purchased Mrs. Taylor’s one-half interest in the plantation, and a dispute arose as to the amount of her personal tax liability on the sale. A suit filed in the Tax Court was settled, and by concurrent agreement among Mrs. Taylor, the plaintiffs, and the Commissioner of Internal Eevenue, it was decided that plaintiffs’ basis for this one-half interest in the plantation for income taxes for all future years would not exceed $58,187.74. There is no dispute among the parties to these actions about the basis of this part of the plantation.
No improvements were added nor was depreciation allowed or allowable on the plantation since December 31,1936. Sales of small tracts of the plantation were made in 1950,1951, and 1954. The parties are agreed that these sales reduced the basis for the remainder of the plantation by $5,297.14.
Among the assets distributed upon the liquidation of the corporation, there were six parcels of tracts of real estate, including the plantation. In addition to the sale of the small tracts from the plantation in the years 1950 to 1954, all of these parcels, except the bulk of the plantation and the Silver Lake real estate, were sold between 1939 and 1955. In reporting capital gains or losses on the sale of such real estate, plaintiffs in each instance used the fair market value as of December 30,1936, as the basis of each parcel. Plaintiffs did not claim and the Commissioner did not allow any part of the indebtedness of $145,766.45 assumed by the stockholders on the liquidation of the corporation as a part of the basis for computing capital gains or losses on the sales.
On March 1, 1955, plaintiffs sold the plantation (except the small tracts which had been previously disposed of) for $748,800 of which $196,200 was paid in cash and the balance in mortgage notes aggregating $588,600. Cash payments were made on the notes in 1956, and therefore that taxable year is involved in these suits. At the time of the sale, each of the plaintiffs owned a one-third interest in the plantation. *421 Prior to the sale, the liabilities of the corporation which plaintiffs and Mrs. Taylor had assumed upon its liquidation were discharged.
In reporting the capital gains realized from the sale of the plantation in their income tax returns for 1955 and 1956, plaintiffs used the figure of $149,341.19 as the basis of the plantation. This amount was arrived at by adding to their claimed cost for the plantation a portion of the indebtedness assumed at the time of liquidation of the corporation. The Commissioner asserted deficiencies against the plaintiffs upon his determination that their total adjusted basis for the plantation was $98,122.26, a figure which was computed by using the market value of the portion (a 1%2 interest according to the Commissioner) of the plantation that was distributed to plaintiffs when the corporation was liquidated, plus other items that are not in dispute. Plaintiffs’ timely claims for refund of taxes paid for the years 1955 and 1956 were disallowed and these actions were instituted.
Plaintiffs’ contention as to the correct basis of the plantation at the time of its sale has varied from time to time since the controversy arose.[1] However, the question to be decided is unchanged since, in each instance, plaintiffs seek to increase the basis of the assets distributed to them when the corporation was liquidated by adding a portion of the liabilities they assumed in 1936 and paid sometime prior to 1955.
There is no dispute about the basis of the one-half interest in the plantation conveyed to plaintiffs by Mrs. Taylor, nor as to the effect of the sale of the small tracts from the plantation prior to 1955. Eliminating these uncontroverted matters, the qtiestion before the court may be simplified by assuming that upon the liquidation of the corporation, all of the assets (including the plantation) were distributed to plaintiffs and all the corporate liabilities were then assumed by them and paid several years after the corporation was liquidated.
As thus simplified, the sole issue is whether the basis of the plantation, which was distributed to plaintiffs upon the *422 ■complete liquidation of the Taylor Company and upon which a gain was recognized at the time they received such property, should be computed by adding to the fair market value of the plantation on the date of liquidation a portion of the ■corporate liabilities which they then assumed and discharged prior to their sale of the property in 1955.
The Internal Revenue Code of 1954 states that the gain from the sale of properties shall be the excess of the amount realized from the sale over the adjusted basis of the property sold, 26 U.S.C. (I.R.C. 1954) § 1001 (1958 Ed.). Generally, ■cost is the basis but corporate distributions are an exception. 26 U.S.C. (I.R.C. 1954) § 1012 (1958 Ed.)[2]
The exception to the basis-shall-be-the-cost rule with respect to corporate distributions of the type involved here is 26 U.S.C. (I.R.C. 1954) § 334(a) (1958 Ed.), which states:
SEO. 334. BASIS OE PROPERTY RECEIVED IN LIQUIDATIONS
(a) General Buie. — If property is received in a distribution in partial or complete liquidation * * *, and if gain or loss is recognized on receipt of such property, then the basis of the property in the hands of the dis-tributee shall be the fair market value of such property at the time of the distribution.
While neither section 334(a) nor a counterpart thereof was in effect in 1936, the Senate Committee Report (Sen. Rep. No. 1622, 83rd Cong. 2d Sess. 1954) on the bill which developed into the Internal Revenue Code of 1954 stated:
Subsection (a) sets forth the general rule to the effect that if property is received on a distribution in partial or complete liquidation and if gain or loss is recognized on receipt of such property, then the basis in the hands of the distributee shall be the fair market value of such property at the time of the distribution. * * * While no statutory counterpart appears in the 1939 Code for the rule of subsection (a), this provision is intended to reflect present law in the area.
It is defendant’s position that since section 334(a) merely restates in statutory form which had been the law prior to *423 1954, plaintiffs’ basis for the sale of the plantation in 1955 was the market value of that property at the time it was distributed to plaintiffs.
Plaintiffs agree that section 334(a) is a restatement of existing law and that when the property was distributed to them, its basis in their hands was its fair market value. Plaintiffs, however, insist that their receipt of the plantation upon liquidation should be viewed as a purchase of the property and that the amount of obligations which they assumed at liquidation but discharged in subsequent years should be added to its fair market value as of the date of liquidation in order to arrive at the proper basis at the time they sold it in
1955. Plaintiffs point to the first sentence of 26 U.S.C. (I.R.C. 1954) § 1016(a) (1958 Ed.),[3] and they also rely on 3A Mertens Law of Federal Income Taxation, § 21.10, § 21.11, and cases cited therein, including United States v. Hendler, 303 U.S. 564 and Missouri State Life Insurance Co. v. Commissioner, 78 F. 2d 778. These authorities do not support plaintiffs’ position. A reference to Mertens shows that the two sections mentioned in plaintiffs’ brief discuss situations where cost is the basis, whereas section 384(a) supra clearly states that, when assets are received as a distribution upon the complete liquidation of the corporation and a gain or loss is recognized, the assets in the hands of the distributees shall have a basis equal to their fair market value at the time of the distribution.
The fallacy in plaintiffs’ contention is that the basis of identical property in the hands of a purchaser or stockholder-distributee is to be computed in the same manner. Under current concepts of our law of taxation, a purchase is not considered an appropriate time to measure gain or loss and is not a taxable transaction. It is quite true that a purchaser of property is generally entitled to include in his cost basis, immediately upon purchase, the amount of any mortgages or any other liabilities assumed. On the other hand, a corporate liquidation is a taxable transaction in which the gain or loss *424 is then measured to the shareholders and the amount of gain or loss becomes a factor in fixing the basis of distributed corporate property in the hands of the stockholder-distribu-tees, Fleming v. Commissioner, 153 F. 2d 361. When known liabilities are assumed by the stockholders upon the liquidation of a corporation, the procedure to be followed in determining the shareholder’s net gain or loss is stated in 623 CCH — Standard Federal Tax Reports Para. 2403.105 as follows:
.105 Only net amount received is taxable. — If, as a condition to receiving a liquidation distribution, the dis-tributee agrees to pay a liability of the liquidating corporation — the agreement may be contractual or by operation of law — such liability reduces the amount of the liquidation distribution from which the basis of the stock is deducted. If the existence of the liability and its amount are known at the time of the distribution, the amount received is reduced by the shareholder’s portion of the amount of the liability which he agrees to pay, even though it is paid in a year subsequent to the distribution. * * *
Exactly that procedure was followed by the Commissioner in computing plaintiffs’ capital gains upon the liquidation of the Taylor Company in 1936.
Bead in its entirety, section 1016 contains no provision which authorizes or requires a double deduction such as plaintiffs now seek and, although substantially the same language which plaintiffs have quoted from section 1016(a) (1) is contained in the Revenue Acts of 1932, 1934, 1936, 1938, and in 26 U.S.C. (I.R.C. 1939) § 113(b) (1952 Ed.), plaintiffs have failed to cite an authority which supports their claim to a second tax benefit for the same purpose. There are many cases to the contrary, including Sloss v. Patterson, 48 A.F.T.R. 1744, which is directly in point. In that case, a corporation was liquidated on January 10, 1948, and in computing the capital gains of the distributees during the year of liquidation, the fair market value of the assets distributed to them was reduced by the sum of $41,548.77, which represented an income tax liability that had been determined and assessed against the corporation. Thereafter, in 1951 each of the distributees *425 paid his proportionate share of such income tax deficiency and, in that year, claimed the amounts paid as deductible losses. It was held that they were not entitled to the deduction claimed on account of the payment of the tax in 1951. The principle upon which that decision rests is supported by the cases cited in the court’s conclusions of law and was expressed by the Supreme Court in Ilfeld Co. v. Hernandez, 292 U.S. 62, as follows:
If allowed, this would be the practical equivalent of double deduction. In the absence of a provision of the Act definitely requiring it, a purpose so opposed to precedent and equality of treatment of taxpayers will not be attributed to lawmakers.
It follows that plaintiffs are not entitled to add any portion of the liabilities assumed upon the liquidation of the Taylor Company to the fair market value of the plantation at that time for the purpose of computing capital gains upon the sale in 1955. The total adjusted basis of the plantation at the time of the sale in 1955 was $101,137.60 — $33,712.53 to plaintiffs in each of these three suits (finding 36). However, since defendant has agreed that the Commissioner of Internal Revenue incorrectly determined that the total adjusted basis of the plantation at the time of the sale was $98,122.26 ($32,707.42 to plaintiffs in each of these three cases), plaintiffs are entitled to recover the difference between the amount of taxes paid in 1955 and 1956 and the amount that would have been due for those years if their capital gains on the sale had been computed by using the figure of $101,137.60 ($33,712.53 for plaintiffs in each suit) as the adjusted basis of the plantation at the time of the sale. The amount of the recoveries will be determined pursuant to Rule 38(c).
EINDINGS OP PACT
1. Frank H. Ford and Amanda Taylor Ford are husband and wife, and William F. Taylor, Jr., and Gertrude C. Taylor are husband and wife. Said plaintiffs and plaintiff Nell Taylor Boggs are citizens of the United States and residents of the city of Shreveport, Louisiana.
*426 2. The W. F. Taylor Company, Inc., was engaged in the-wholesale grocery business and in farming, including the operation of three plantations consisting of approximately 8,000 acres.
3. In 1915 W. F. Taylor Company, Inc., had issued and outstanding 1,000 shares of $100 par value stock. The shares were owned as follows:
William F. Taylor_ 800 shares
Frank H. Ford_150 shares
William F. Taylor, Jr_ 50 shares
4.At the death of William F. Taylor in 1922, his 800-shares were held as community property. After his death the shares were owned as follows:
Genevieve G. Taylor (wife)_ 400 shares
William F. Taylor, Jr. (son)_150 shares
Amanda Taylor Ford (daughter)_100 shares
Nell Taylor Boggs (daughter)_100 shares
M. A. Taylor (son)_ 100 shares
Frank H. Ford (son-in-law)_150 shares.
5. The total outstanding stock up to the date of the death of William F. Taylor and continuing on until December 12, 1922, was 1,000 shares. On the latter date, a stock dividend of 400 percent was issued, and thereafter stock ownership was as follows:
Genevieve G. Taylor owned 2,000 shares;
W. F. Taylor, Jr., owned 750 shares;
Amanda T. Ford owned 500 shares;
Mrs. C. D. Evans owned 500 shares;
M. A. Taylor owned 500 shares;
Frank Ford owned 750 shares.
A total of 5,000 shares was outstanding.
6. In June 1931, M. A. Taylor died, and his mother, brother, and two sisters each inherited 125 shares, and stock ownership after his death was as follows:
Genevieve G. Taylor_2,125 shares
William F. Taylor, Jr- 875 shares
Amanda T. Ford_ 625 shares
Mrs. C. D. Evans-'- 625 shares
Frank H. Ford- 750 shares
A total of 5,000 shares was outstanding.
*427 7.On December 30, 1936, the W. F. Taylor Company,. Inc., was liquidated. At the time of liquidation, W. F. Taylor, Jr., and Frank H. Ford agreed to waive their original 50 and 150 shares respectively (250 and 750 shares respectively following the 400 percent stock dividend) which left ownership of the company as follows:
Genevieve G. Taylor_2,125 shares
William F. Taylor, Jr._ 625 shares
Amanda. Taylor Ford_ 625 shares
Nell Taylor Boggs_ 625 shares
Frank H. Ford_
4,000 shares
8. The parties to the liquidation intended that Genevieve G. Taylor, the mother, should own one-half of the company, and each of the three children, William F. Taylor, Jr., Amanda Taylor Ford, and Neil Taylor Boggs, should own one-sixth. The Commissioner of Internal Revenue contended that the stock transactions showed Genevieve G. Taylor to have received slightly more than one-half, approximately 1%2» while each of the three children received slightly less than one-sixth of the company. The parties are now agreed that Genevieve G. Taylor did receive one-half of the company, and each of the three children received one-sixth of the company.
9. Frank H. Ford was liquidator of W. F. Taylor Company, Inc., and in the liquidator’s deed dated December 30, 1936, one-half of the assets of the corporation were distributed to Genevieve G. Taylor, and one-sixth of the assets were distributed to each of the plaintiffs, William F. Taylor, Jr., Amanda T. Ford, and Nell Taylor Boggs, subject to each grantee’s assuming the same proportion of the liabilities of the corporation as the assets which they, respectively, received under the deed.
10. The assets and liabilities of W. F. Taylor Company, Inc., on December 30,1936, as shown by its books and records, were as follows:
*428 ASSETS
Cash._ $759.52
Free State Plantation_ 96,494. 00 ■
G. E. Ogden Eeal Estate_ 80,000.00
1130 Prospect St. Eeal Estate- 1,862. 50
Olive and Creswell Sts. Eeal Estate- 4,359.95
Silver Lake (Jones St.) Eeal Estate- 19,960.00
Natchitoches, La. Eeal Estate- 1,137.25
Natchitoches, La. Building- 8,539.23
Notes Eeceivable_ 325.00
J. M. Bridges-_- 9. 65
Taylor Land and Mercantile Co- 5,888.54
Cash Value of Life Insurance- 41,143. 83
total assets_ $210,479.47
LIABILITIES
Account Eeceivable — credit balance-$375.00
Notes Payable Commercial National Bank_ 66,162.00
Notes Payable — Continental Bank & Trust Co_ 18,126.35
J. H. Brown___ 36.10
F. H. Ford, Trustee-786.07
Mrs. S. F. Martin Estate_ 2,000.00
Mrs. S. F. Martin Eents_ 113.95
Notes Payable, borrowed on life insurance— 41,143. 83
RESERVES:
Accrued Interest Coml. Nat. Bank_ $14,687.85
Accrued Int. Cont. Amer. Bank & Trust Co_ 181.26
Abstract Co., Shreveport, La._ 613.00
Abstract Co., Natchi-toches, La_ 102.00
Hodges Auto Storage— 19. 65
Lee Hardware Co., Free State_ 4.70
Strother Tire Co_ 43.10
*429 Taxes — State La. Parish. Bossier_ $450. 90
“ —City Natchi-toches, La_ 117. 00
“ —State La. Par. Natchitoches- 186. 85
“ —State La. Parish Caddo_ '53. 52
“ —State La. Parish Caddo_ 265. 35
“ —City Shreveport, La_ 50. 02
“ —City Shreveport, La_ 247. 95 17, 023.15
TOTAL LIABILITIES_ $145, 766. 45
NET WORTH-1_ $64, 713. 02
The fair market values of the assets as of December 30, 1936, were their respective book values.
11. The gain in the value of the stock realized by the shareholders upon liquidation of W. F. Taylor Company, Inc., was computed by the Commissioner in accordance with Section 115(c) of the Revenue Act of 1936. The Commissioner determined the value of the stock by adding to the net worth as shown on the corporation’s books certain accounts of the stockholders and of the Taylor Estate previ - ously written off, as follows:
Total assets per books- $210,479.47
Total liabilities per books- 145,766.45
Net worth per books_ $64,713.02
Taylor Estate accounts previously written off_' 197,638.94
Stockholders accounts previously written off_ 77,250.01
Adjusted net worth per Commissioner _ $339,601.97
12. The adjusted net worth of the W. F. Taylor Company, Inc., assets to which the various stockholders were entitled on the exchange of their stock as of December 30, 1936, as determined by the Commissioner and upon which their in *430 dividual capital gains tax was computed by tbe Commissioner on liquidation of W. F. Taylor Company, Inc., was as follows:

13. Plaintiffs and Genevieve G. Taylor paid tbe amount of capital gains tax upon tbe exchange of tbeir stock in W. F. Taylor Company, Inc., as determined by the Commissioner to be due as a result of tbe liquidation of the corporation.
14. On October 31, 1938, William F. Taylor, Jr., Amanda Taylor Ford, and Nell Taylor Evans (presently known as Nell Taylor Boggs) purchased equal one-third interests in Genevieve Taylor’s one-half interest in Free State Plantation, which she had received in liquidation of the W. F. Taylor Company, Inc., on December 30,1936. The consideration paid was promissory notes executed by the purchasers in the face amount of $100,000.
15. A dispute arose between Genevieve G. Taylor and the Internal Eevenue Service as to the amount of the gain reportable by her from the sale of her one-half interest in the Free State Plantation to the plaintiffs. She filed a petition in the Tax Court, Docket No. 110317, which was later settled. Part of the settlement consisted of a collateral agreement signed by Genevieve G. Taylor and the plaintiffs herein, which stated in part:
That the basis for Federal income tax purposes in future years for the property conveyed by said Genevieve G. Taylor to William F. Taylor, Jr., Amanda Taylor Ford, and Nell Taylor Evans, by act of sale ?assed on October 31, 1938, recorded in Book 395, page 35, Conveyance Eecords of Caddo Parish, Louisiana, will contain no element of value in excess of $58,187.74, on. account of the ten notes of the purchasers each in *431 the sum of $10,000.00, as described in said conveyance, said value being the value proposed for said notes for the purpose of determining the taxable gain upon which said above-mentioned deficiency of $1,001.47 is based.
16. The Free State Plantation was one of the assets distributed on liquidation of the W. F. Taylor Company, Inc. At the time of the sale of the Free State Plantation in 1955, it was owned one-third by Frank H. Ford and Amanda Taylor Ford, husband and wife; one-third by William F. Taylor, Jr., and Gertrude C. Taylor, husband and wife; and one-third by Nell Taylor Boggs.
17. The fair market value of the Free State Plantation on December 31, 1936, was the book value of $96,494.
18. There have been no improvements added nor depreciation allowed or allowable on the Free State Plantation since December 31, 1936.
19. Sales of small tracts of the Free State Plantation were made in 1950, 1951, and 1954. These sales reduced the basis of the Free State Plantation by $5,297.14. The proceeds received and the basis reduction on the sales were allocated equally between the equal one-third owners, namely Amanda Taylor Ford and her husband, Frank H. Ford, William F. Taylor, Jr., and his wife, Gertrude C. Taylor, and Nell Taylor Boggs.
20. On March 1, 1955, plaintiffs sold the Free State Plantation to Thomas, Hawn, Hawn and Hawn for a total consideration of $784,800, of which $196,200 was payable in cash and the remainder of $588,600 was payable in mortgage notes.
21. Plaintiffs William F. Taylor, Jr., Amanda T. Ford and Nell T. Boggs conducted their activities as partners under the firm name of W. F. Taylor Estate. A partnership return was filed for the year 1955 in which total long-term capital gains of $519,053.60, including a long-term capital gain of $161,600.13 on the sale of Free State Plantation, were reported for 1955.
22. Plaintiffs Frank H. Ford and Amanda T. Ford filed a joint income tax return for 1955 in which they reported a long-term capital gain of $173,017.87. Plaintiffs William F. Taylor, Jr., and Gertrude C. Taylor filed a joint income tax *432 return for 1955 in which, they reported a long-term, capital gain of $173,017.87. Nell Taylor Boggs filed an income tax return for 1955 in which she reported a long-term capital gain of $173,017.87. This figure represented one-third of the long-term capital gain of $519,053.60 shown on the partnership return of W. F. Taylor Estate for 1955, which included the capital gain of $161,600.13 reported on the sale of Free State Plantation. All of said returns were filed on or before the due date.
23. On May 20, 1958, the Commissioner mailed deficiency letters for the year 1955 to plaintiffs Frank H. Ford and Amanda T. Ford, proposing a deficiency of $5,908.39; to plaintiffs William F. Taylor, Jr., and Gertrude C. Taylor, proposing a deficiency of $3,031.81; and to plaintiff Nell Taylor Boggs, proposing a deficiency of $2,858.03. These letters contained the following paragraph:
3. It is determined that a gain of $175,483.81 was realized during the taxable year from the sale of the Free State Plantation rather than a gain of $161,600.13 reported on the partnership return. It is also determined that the total adjusted basis on the sale of the Free State Plantation was $98,122.26 instead of $149,-341.19 as returned. Said $98,122.26 is composed of the following:
i%2nds interest received on December 30, 1936 on the liquidation of W. F. Taylor Co., Inc., which interest then had a fair market value of_ $45,231. 56
17/32nds interest purchased on October 31, 1938 from Mrs. Genevieve G. Taylor by the transfer of notes then having a fair market value of_ $58,187.74
Subtotal_$103,419.40
[sic]
Less: Cost of sales made from the property in 1950, 1951 and 1954_ 5,297.14
Total adjusted basis of Free State Plantation_ $98,122. 26
*433 24.Plaintiffs paid income taxes for the year 1955 as follows :
Frank H. Ford and Amanda T. Ford:
Paid on return in March 1956- $36,055.41
Paid deficiency in May 1958- 5,908.39
$41,963. 80
William F. Taylor and Gertrude C. Taylor:
Paid on return in March 1956- $43,549.83
Paid deficiency on June 13,1958- 3,031. 81
$46,581. 64
Nell Taylor Boggs:
Paid on return in March 1956- $43,254.47
Paid deficiency on June 13,1958- 2,858.03
$46,112. 50
25.Plaintiffs filed claims for refund of income taxes for 1055 as follows:
Frank H. Ford and Amanda T. Ford:
Original, dated June 9, 1958 for- $17,399.55
Amended, dated July 1, 1959 for- 20,397.12
William F. Taylor and Gertrude C. Taylor:
Original, dated June 9, 1958 for- $15,088.85
Amended, dated July 1,1959 for- 3,999. 84
Nell Taylor Boggs:
Original, dated July 9,1958 for- $13,304. 87
Amended, dated July 1, 1959 for- 3,754.11
26. A partnership return of W. F. Taylor Estate was filed for 1956 showing cash collections of $446,725 during 1956 on mortgage notes received on the sale of Free State Plantation during 1955, and a capital gain of $338,804.73 realized from said cash collections. Said partnership return also showed an additional capital gain of $30,000 and a capital loss of $16,090.05, and net capital gains of $352,714.68.
27. Plaintiffs Frank H. Ford and Amanda T. Ford filed a joint income tax return for 1956 in which they reported a long-term capital gain of $117,571.56. Plaintiffs William F. Taylor, Jr., and Gertrude C. Taylor filed a joint income tax return for 1956 in which they reported a long-term capital gain of $117,571.56. Plaintiff Nell Taylor Boggs filed an income tax return for 1956 in which she reported a long-term capital gain of $117,571.56. This figure represented *434 one-third of the long-term capital gain of $352,714.68 shown on the partnership return of W. F. Taylor Estate for 1956, which included the capital gain of $338,804.73 reported on the collections received during 1956 on the mortgage notes received on the sale of Free State Plantation during 1955.
28. On March 26, 1959, the Commissioner mailed deficiency letters for the year 1956 to plaintiffs Frank H. Ford and Amanda T. Ford, proposing a deficiency of $7,383.82; to plaintiffs William F. Taylor, Jr., and Gertrude C. Taylor, proposing a deficiency of $2,537.30; and to plaintiff Nell Taylor Boggs proposing a deficiency of $2,438.15. Each of these deficiency letters contained the following paragraph:
(a) It is determined that your distributive share of the long-term capital gain from the partnership of W. F. Taylor Estate is $127,274.22. Inasmuch as you reported $117,571.56, your taxable income is increased by one-half of the difference of $9,702.66. During the taxable year, installment collections were made from the sales of Free State Plantation in the year 1955.
The total adjusted basis was reduced from $149,341.19 to $98,122.26 which was determined as follows:
1%2nds interest received on December 30, 1936 on the liquidation of W. F. Taylor Co., Ltd., which interest then had a fair market value of_ $45,231. 56
1%2nds interest received on October 31, 1938 from Mrs. Genevieve G. Taylor by the transfer of notes then having a fair market value of_ 58,187.74
Subtotal_$103,419.40
[sic]
Less: Cost of sales made from the property in 1950, 1951, and 1954_ $5,297.14
$98,122.26
29. Plaintiffs paid income taxes for the year 1956 as follows:
Frank H. Ford and Amanda T. Ford:
Paid on return in March 1957_ O O lo cq ^9*
Paid deficiency on June 26, 1959_ CO CO CO CO
$27,904. 52
*435 William F. Taylor and Gertrude C. Taylor:
Paid on return in March 1957_ $33, 864.02
Paid deficiency on June 26, 1959- 2,537.30
$36,401.32
Nell Taylor Boggs:
Paid on return in March 1957_ $31,448.32
Paid deficiency on July 1, 1959_ 2,438.15
$33,886.47
30.Plaintiffs filed claims for refund for 1956 as follows:
Frank H. Ford and Amanda T. Ford:
Original, filed March 11, 1958, for_$20,482. 82
Amended, filed July 1, 1959, for_ 22, 545.70
William F. Taylor and Gertrude C. Taylor:
Original, filed March 11, 1958, for_$15,088. 85
Amended, filed July 1, 1959, for_ 3,999. 84
Nell Taylor Boggs:
Original, filed March 11, 1958, for_$30,448. 32
Amended, filed July 1, 1959, for_ 10,267. 80
31. On April 7, 1959, the Commissioner rejected plaintiffs’ original claims for refund for 1955 and 1956.
32. On November 10, 1959, the District Director of Internal Eevenue wrote plaintiffs a letter, in which he stated that the claims filed by plaintiffs for 1955 and 1956 on July 2, 1959, could not be considered as claims for refund, as the original claims had been rejected on April 7, 1959. The District Director stated that the claims filed on July 2,1959, would be considered as requests for reconsideration of the claims previously disallowed.
33. On March 29,1960, the associate chief of the appellate division of the Internal Kevenue Service wrote the plaintiffs a letter in which he stated that it had been concluded that there was no basis for reopening the claims for 1955 and 1956.
34. As previously stated, the major portion of the Free State Plantation was sold on March 1,1955. The Silver Lake (Jones St.) real estate has not been sold.
The remainder of the real estate shown in finding 10 was sold as follows:
(a) Small tracts of the Free State Plantation were sold in 1950,1951, and 1954, as stated in finding 19;
*436 (b) G. E. Ogden real estate sold in 1939 and 1945
(c) 1130 Prospect St. real estate sold on December 14, 1936;
(d) Olive and Creswell Sts. real estate sold in 1955, and
(e) Natchitoches real estate and building sold in 1945.
In reporting the profit or loss on the sale of items of real estate listed in (a) to (e) inclusive above, the plaintiffs in each instance used as their basis the fair market value of such properties as of December 30, 1936, the date the corporation was liquidated. These values are set out in finding 10.
35. All of the indebtedness of $145,766.45 assumed by the stockholders at the time of the liquidation of W. F. Taylor Company, Inc., on December 30, 1936, has been paid. The plaintiffs did not claim and the Commissioner did not allow any part of this indebtedness in determining the cost basis of the respective assets described in (a) to (e) inclusive of finding 34 for the purpose of ascertaining the gain or loss thereon at the time of sale.
36.. The basis of the Free State Plantation to plaintiffs at the time of sale in 1955 was $101,137.60 determined as follows:
One-half interest in Free State Plantation, received by plaintiffs on December 30, 1936, on liquidation of the W. F. Taylor Company, which then had a fair market value of_ $48,247. 00
One-half interest in Free State Plantation purchased from Genevieve G. Taylor on October 81,1988, with an agreed basis of_ 58,187.74
Subtotal_-_$106,434.74
Less basis allocated to portions of Free State Plantation sold in 1950, 1951 and 1954 _ 5,297.14
Total adjusted basis.,._$101,137.60
CONCLUSION OK LAW
Upon the foregoing findings of fact which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs in each of these cases are entitled to recover. The amount of recovery is to be determined pursuant to Eule 38 (c).
*437 In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amounts due thereunder, it was ordered on June 27, 1963, that judgments be entered as follows:
In No. 383-60, judgment for the plaintiffs for $306.38, together with interest on $106.35 from May 27, 1958, and on $200.03 from June 26, 1959, at the rate of 6 percent per annum, to the date of this judgment.
In No. 400-60, judgment for the plaintiffs for $238.40, together with interest on $77.05 from June 13, 1958, and on $161.35 from June 26, 1959, at the rate of 6 percent per annum, to the date of this judgment.
In No. 401-60, judgment for the plaintiff for $238.26, together with interest on $77.08 from June 13, 1958, and on $161.18 from July 1,1959, at the rate of 6 percent per annum, to the date of this judgment.

 The correct basts as claimed by plaintiffs Is (a) In their petitions, $179,217.96, (b)¡ In their requested findings of fact, $162,043.60, and (c) In an amended requested finding contained In their brief, $140,816.60.

 § 1012. BASIS OP PBOPEBTY— COST
The basis of property shall be the cost of such property, except as otherwise provided in this subchapter and subchapters C (relating to corporate distributions and adjustments), * * •.

 § 1016. ADJUSTMENTS TO BASIS.
(a) General rule.
Proper adjustment In respect oí the property shall In all cases be made—
(1) for expenditures, receipts, losses, or other Items, properly chargeable to capital account, • * *.