Frank H. FORD and Amanda T. Ford

v.

The UNITED STATES.

William F. TAYLOR and Gertrude C. Taylor

v.

The UNITED STATES.

Nell Taylor BOGGS

v.

The UNITED STATES.

Nos. 383–60, 400–60, 401–60.

United States Court of Claims.

Jan. 11, 1963.

Walter E. Barton, Washington, D. C., for plaintiffs.

Cynthia Holcomb, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for the defendant. Edward S. Smith, Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the brief.

PER CURIAM.

This case was referred pursuant to Rule 45 to Wilson Cowen, a trial commissioner of this court, with directions to make findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed March 5, 1962. Briefs were filed by the parties, exceptions to the commissioners' findings of fact and recommended conclusion of law were filed by the plaintiffs and the cases were submitted to the court on oral argument of counsel. Since the court is in agreement with the findings and recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in these cases. Plaintiffs are entitled to recover and judgment is entered for plaintiffs in each case with the amount of recovery to be determined pursuant to Rule 38(c).

OPINION OF COMMISSIONER

These three suits, which were consolidated for trial because they involve the same facts and the same legal issue, were brought to recover alleged overpayment of income taxes for the calendar years 1955 and 1956.

The plaintiffs and Mrs. Genevieve G. Taylor were stockholders in the W. F. Taylor Company, Inc., which owned the Free State Plantation (hereinafter referred to as the plantation) and other assets.

On December 30, 1936, the corporation was liquidated and thereupon one-half of the assets were distributed to the plaintiffs and one-half of the assets were distributed to Mrs. Taylor. The liabilities of the corporation, aggregating $145,766.45, were assumed pro rata by the plaintiffs and Mrs. Taylor.

As a result of the liquidation, the shareholders paid a capital gains tax in accordance with section 115(c) of the Revenue Act of 1936, 49 Stat 1648. The tax was computed on the difference between the shareholders' basis of their stock in the corporation and the market value of the assets received, less the assumed liabilities of $145,766.45, all as determined by the Commissioner of Internal Revenue. Thus, the amount of the corporate liabilities assumed by the plaintiffs and Mrs. Taylor served in each case to decrease the amount of gain they realized on the liquidation and therefore the amount of their individual income tax liabilities.

When the Taylor Company was liquidated, the plantation had a fair market value of $96,494, which was also the value indicated on the company's books.

In 1938 the plaintiffs purchased Mrs. Taylor's one-half interest in the plantation, and a dispute arose as to the amount of her personal tax liability on the sale. A suit filed in the Tax Court was settled, and by concurrent agreement among Mrs. Taylor, the plaintiffs, and the Commissioner of Internal Revenue, it was decided that plaintiffs' basis for this one-half interest in the plantation for income taxes for all future years would not exceed $58,187.74. There is no dispute among the parties to these actions about the basis of this part of the plantation.

No improvements were added nor was depreciation allowed or allowable on the plantation since December 31, 1936. Sales of small tracts of the plantation were made in 1950, 1951, and 1954. The parties are agreed that these sales reduced the basis for the remainder of the plantation by $5,297.14.

Among the assets distributed upon the liquidation of the corporation, there were six parcels of tracts of real estate, including the plantation. In addition to the sale of the small tracts from the plantation in the years 1950 to 1954, all of these parcels, except the bulk of the plantation and the Silver Lake real estate, were sold between 1939 and 1955. In reporting capital gains or losses on the sale of such real estate, plaintiffs in each instance used the fair market value as of December 30, 1936, as the basis of each parcel. Plaintiffs did not claim and the Commissioner did not allow any part of the indebtedness of $145,766.45 assumed by the stockholders on the liquidation of the corporation as a part of the basis for computing capital gains or losses on the sales.

On March 1, 1955, plaintiffs sold the plantation (except the small tracts which had been previously disposed of) for $748,800 of which $196,200 was paid in cash and the balance in mortgage notes aggregating $588,600. Cash payments were made on the notes in 1956, and therefore that taxable year is involved in these suits. At the time of the sale, each of the plaintiffs owned a one-third interest in the plantation. Prior to the sale, the liabilities of the corporation which plaintiffs and Mrs. Taylor had assumed upon its liquidation were discharged.

In reporting the capital gains realized from the sale of the plantation in their income tax returns for 1955 and 1956, plaintiffs used the figure of $149,341.19 as the basis of the plantation. This amount was arrived at by adding to their claimed cost for the plantation a portion of the indebtedness assumed at the time of liquidation of the corporation. The Commissioner asserted deficiencies against the plaintiffs upon his determination that their total adjusted basis for the plantation was $98,122.26, a figure which was computed by using the market value of the portion (a $15/32$ interest according to the Commissioner) of the plantation that was distributed to plaintiffs when the corporation was

liquidated, plus other items that are not in dispute. Plaintiffs' timely claims for refund of taxes paid for the years 1955 and 1956 were disallowed and these actions were instituted.

Plaintiffs' contention as to the correct basis of the plantation at the time of its sale has varied from time to time since the controversy arose.[1] However, the question to be decided is unchanged since, in each instance, plaintiffs seek to increase the basis of the assets distributed to them when the corporation was liquidated by adding a portion of the liabilities they assumed in 1936 and paid sometime prior to 1955.

There is no dispute about the basis of the one-half interest in the plantation conveyed to plaintiffs by Mrs. Taylor, nor as to the effect of the sale of the small tracts from the plantation prior to 1955. Eliminating these uncontroverted matters, the question before the court may be simplified by assuming that upon the liquidation of the corporation, all of the assets (including the plantation) were distributed to plaintiffs and all the corporate liabilities were then assumed by them and paid several years after the corporation was liquidated.

As thus simplified, the sole issue is whether the basis of the plantation, which was distributed to plaintiffs upon the complete liquidation of the Taylor Company and upon which a gain was recognized at the time they received such property, should be computed by adding to the fair market value of the plantation on the date of liquidation a portion of the corporate liabilities which they then assumed and discharged prior to their sale of the property in 1955.

The Internal Revenue Code of 1954 states that the gain from the sale of properties shall be the excess of the amount realized from the sale over the adjusted basis of the property sold, 26 U.S.C. (I.R.C.1954) § 1001 (1958 Ed.). Generally, cost is the basis but corporate distributions are an exception. 26 U.S. C. (I.R.C.1954) § 1012 (1958 Ed.)[2]

The exception to the basis-shall-be-the-cost rule with respect to corporate distributions of the type involved here is 26 U.S.C. (I.R.C.1954) § 334(a) (1958 Ed.), which states:

"§ 334. Basis of property received in liquidations

"(a) *General rule.*—If property is received in a distribution in partial or complete liquidation * * *, and if gain or loss is recognized on receipt of such property, then the basis of the property in the hands of the distributee shall be the fair market value of such property at the time of the distribution."

While neither section 334(a) nor a counterpart thereof was in effect in 1936, the Senate Committee Report (Sen.Rep. No. 1662, 83rd Cong. 2d Sess. 1954) on the bill which developed into the Internal Revenue Code of 1954 stated:

"Subsection (a) sets forth the general rule to the effect that if property is received on a distribution in partial or complete liquidation and if gain or loss is recognized on receipt of such property, then the basis in the hands of the distributee shall be the fair market value of such property at the time of the distribution. * * * While no statutory counterpart appears in the 1939 Code for the rule of subsection (a), this provision is intended to reflect present law in the area." U.S.Code Congressional and Administrative News 1954, p. 4894.

It is defendant's position that since section 334(a) merely restates in statutory form which had been the law prior to 1954, plaintiffs' basis for the sale of the plantation in 1955 was the market value of that property at the time it was distributed to plaintiffs.

---

1. The correct basis as claimed by plaintiffs is (a) in their petitions, $179,217.-96, (b) in their requested findings of fact, $162,043.60, and (c) in an amended requested finding contained in their brief, $140,816.60.

2. "§ 1012. Basis of property—Cost
   "The basis of property shall be the cost of such property, except as otherwise provided in this subchapter and subchapters C (relating to corporate distributions and adjustments), * * *."

Plaintiffs agree that section 334(a) is a restatement of existing law and that when the property was distributed to them, its basis in their hands was its fair market value. Plaintiffs, however, insist that their receipt of the plantation upon liquidation should be viewed as a purchase of the property and that the amount of obligations which they assumed at liquidation but discharged in subsequent years should be added to its fair market value as of the date of liquidation in order to arrive at the proper basis at the time they sold it in 1955. Plaintiffs point to the first sentence of 26 U.S.C. (I.R.C.1954) § 1016(a) (1958 Ed.),[3] and they also rely on 3A Mertens Law of Federal Income Taxation, § 21.10, § 21.11, and cases cited therein, including United States v. Hendler, 303 U.S. 564, 58 S.Ct. 655, 82 L.Ed. 1018 and Missouri State Life Insurance Co. v. Helvering, 8 Cir., 78 F.2d 778. These authorities do not support plaintiffs' position. A reference to Mertens shows that the two sections mentioned in plaintiffs' brief discuss situations where cost is the basis, whereas section 334(a) supra clearly states that, when assets are received as a distribution upon the complete liquidation of the corporation and a gain or loss is recognized, the assets in the hands of the distributees shall have a basis equal to their fair market value at the time of the distribution.

■■ The fallacy in plaintiffs' contention is that the basis of identical property in the hands of a purchaser or stockholder-distributee is to be computed in the same manner. Under current concepts of our law of taxation, a purchase is not considered an appropriate time to measure gain or loss and is not a taxable transaction. It is quite true that a purchaser of property is generally entitled to include in his cost basis, immediately upon purchase, the amount of any mortgages or any other liabilities assumed. On the other hand, a corporate liquidation is a taxable transaction in which the gain or loss is then measured to the shareholders and the amount of gain or loss becomes a factor in fixing the basis of distributed corporate property in the hands of the stockholder-distributees, Fleming v. Commissioner, 5 Cir., 153 F.2d 361. When known liabilities are assumed by the stockholders upon the liquidation of a corporation, the procedure to be followed in determining the shareholder's net gain or loss is stated in 623 CCH—Standard Federal Tax Reports Para. 2403.105 as follows:

".105 Only net amount received is taxable.—If, as a condition to receiving a liquidation distribution, the distributee agrees to pay a liability of the liquidating corporation—the agreement may be contractual or by operation of law— such liability reduces the amount of the liquidation distribution from which the basis of the stock is deducted. If the existence of the liability and its amount are known at the time of the distribution, the amount received is reduced by the shareholder's portion of the amount of the liability which he agrees to pay, even though it is paid in a year subsequent to the distribution.

\* \* \*"

Exactly that procedure was followed by the Commissioner in computing plaintiffs' capital gains upon the liquidation of the Taylor Company in 1936.

Read in its entirety, section 1016 contains no provision which authorizes or requires a double deduction such as plaintiffs now seek and, although substantially the same language which plaintiffs have quoted from section 1016 (a) (1) is contained in the Revenue Acts of 1932, 1934, 1936, 1938, and in 26 U.S. C. (I.R.C.1939) § 113(b) (1952 Ed.), plaintiffs have failed to cite an authority which supports their claim to a second

---

3. "§ 1016. Adjustments to basis
    "(a) General rule.—
    "Proper adjustment in respect of the property shall in all cases be made—

"(1) for expenditures, receipts, losses, or other items, properly chargeable to capital account, \* \* \*."

tax benefit for the same purpose. There are many cases to the contrary, including Sloss v. Patterson, 48 A.F.T.R. 1744, which is directly in point. In that case, a corporation was liquidated on January 10, 1948, and in computing the capital gains of the distributees during the year of liquidation, the fair market value of the assets distributed to them was reduced by the sum of $41,548.77, which represented an income tax liability that had been determined and assessed against the corporation. Thereafter, in 1951 each of the distributees paid his proportionate share of such income tax deficiency and, in that year, claimed the amounts paid as deductible losses. It was held that they were not entitled to the deduction claimed on account of the payment of the tax in 1951. The principle upon which that decision rests is supported by the cases cited in the court's conclusions of law and was expressed by the Supreme Court in Ilfeld Co. v. Hernandez, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127, as follows:

> "If allowed, this would be the practical equivalent of double deduction. In the absence of a provision of the Act definitely requiring it, a purpose so opposed to precedent and equality of treatment of taxpayers will not be attributed to lawmakers."

It follows that plaintiffs are not entitled to add any portion of the liabilities assumed upon the liquidation of the Taylor Company to the fair market value of the plantation at that time for the purpose of computing capital gains upon the sale in 1955. The total adjusted basis of the plantation at the time of the sale in 1955 was $101,137.60—$33,712.53 to plaintiffs in each of these three suits (finding 36). However, since defendant has agreed that the Commissioner of Internal Revenue incorrectly determined that the total adjusted basis of the plantation at the time of the sale was $98,122.26 ($32,707.42 to plaintiffs in each of these three cases), plaintiffs are entitled to recover the difference between the amount of taxes paid in 1955 and 1956 and the amount that would have been due for those years if their capital gains on the sale had been computed by using the figure of $101,137.60 ($33,712.53 for plaintiffs in each suit) as the adjusted basis of the plantation at the time of the sale. The amount of the recoveries will be determined pursuant to Rule 38(c).