**R. Timmis WARE and Catherine K. Ware, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 807, Docket 89–4113.**

United States Court of Appeals, Second Circuit.

Argued Feb. 26, 1990.

Decided June 21, 1990.

As Amended Sept. 17, 1990.

R. Timmis Ware, New York City, pro se and Attorney for appellant Catherine K. Ware.

Robert S. Pomerance, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Thomas R. Lamons, Attys., Tax Div., Dept. of Justice, of counsel), for appellee.

Before OAKES, Chief Judge, and KEARSE and WALKER, Circuit Judges.

OAKES, Chief Judge:

R. Timmis Ware appeals a decision of the United States Tax Court, Theodore Tannenwald, Jr., Judge, entered on April 19, 1989, determining that a portion of a payment received by Ware upon withdrawing from his law partnership was attributable to an "unrealized receivable" and therefore should have been treated as ordinary income rather than as capital gain on Ware's 1982 income tax return. We affirm.

In 1981, Ware was a partner in the New York City law firm of Rogers, Hoge & Hills when he and another partner, James B. Swire, helped arrange the sale of a pharmaceutical plant in Ireland. In return, they were to receive a fee. Hoping to keep the fee for themselves, Ware and Swire continuously concealed their activities from the firm, despite using the firm's facilities and personnel to arrange the sale over a period of several months.* In August 1981, the sale closed, but a dispute arose with the owner of the pharmaceutical plant over payment of the fee, and as a result the fee was paid to an escrow agent in Ireland designated by Ware. By October 1981, the firm became aware of Ware's and Swire's activities and claimed rights to the fee. Ware and Swire resisted. The firm filed suit against them in the Supreme Court of New York and forced them out of the partnership. Their departure was memorialized in a withdrawal agreement signed on January 15, 1982. The agreement provided for the sale of Ware's and Swire's respective partnership interests back to the firm as of December 31, 1981, as well as for payment of half of the Ireland fee to the firm and half to Ware and Swire.

On his 1982 tax return, Ware treated the $95,306.64 he received from the Ireland fee as capital gain income. He claimed that it constituted part of the proceeds from the sale of his interest in the partnership and was entitled, pursuant to section 741 of the Internal Revenue Code, to capital gain treatment. See 26 U.S.C. § 741 (1988). A revenue agent for the Internal Revenue Service performed an audit and concluded that the fee should be treated as ordinary income, because it was earned directly by Ware and not by the partnership. The IRS Appeals Division agreed. Accordingly, a statutory notice of deficiency was issued, positing that Ware had underpaid his taxes by $31,969.

Ware petitioned for review to the Tax Court. In lieu of a trial, Ware and the Commissioner stipulated to a set of facts for the Tax Court's consideration. After the stipulated facts were submitted to the

---

* Swire was not a party to this action and vigorously disputes any claim of impropriety on his part. He maintains that he has fully complied with his tax obligations regarding this transaction and, to our knowledge, the IRS has taken no action against him. To the extent the record developed in the Tax Court appears to reflect adversely on Swire, who had no opportunity to contest it, no adverse conclusions as to Swire's conduct should be drawn from this opinion.

Tax Court, opening briefs were filed within one day of each other by both parties in June 1988. Only then *did the Commission*er advance a different theory for why the fee should have been treated as ordinary income. The Commissioner now conceded that the fee was indeed income to the firm and not directly to Ware. Nevertheless, the Commissioner argued, the fee was an "unrealized receivable" of the partnership and as such not subject to capital gain treatment. *See* 26 U.S.C. § 751(a)(1) (1988). The Tax Court accepted this theory and found in favor of the Commissioner. *See* T.C. Memo 1989–165 (Apr. 13, 1989), *petition for reconsideration denied*, 92 T.C. No. 83 (June 13, 1989).

In this appeal, Ware contends, first, that the fee was not an unrealized receivable; second, that even if the fee were an unrealized receivable, it would not be attributable to him; and third, that the Commissioner raised the unrealized receivable issue too late for it to be considered by the Tax Court.

## DISCUSSION

■■■■ The proceeds from a sale of an interest in a partnership are generally treated as capital gain, except to the extent that they are attributable to "unrealized receivables," which are treated as ordinary income. *See* 26 U.S.C. §§ 741, 751(a)(1). Section 751(c) defines "unrealized receivables" as follows:

> For purposes of this subchapter, the term "unrealized receivables" includes, to the extent not previously includible in income under the method of accounting used by the partnership, any rights (contractual or otherwise) to payment for— (1) goods delivered, or to be delivered ..., or (2) services rendered, or to be rendered.

26 U.S.C. § 751(c) (1988). The point behind denying capital gain treatment for unrealized receivables to the departing partner is that they correspond to income that has not yet become part of the partnership interest and, absent that partner's exchange of his interest, would be taxable to him as ordinary income. Congress wished "to prevent the use of the partnership as a device for obtaining capital-gain treatment on fees or other rights to income." S.Rep. No. 1622, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Admin.News 4621, 4732. Without the unrealized receivable exception to capital gain treatment of sale of partnership interests, members of a partnership could, by dissolving and reforming the partnership each year, be able to treat their otherwise ordinary income as capital gains arising out of the partners' sales of their interests in the partnership.

We have no hesitation concluding that the Ireland fee was an unrealized receivable of the partnership. As section 751(c) makes clear, whether a fee is an unrealized receivable involves a two-step inquiry. First, there must be a right to payment for the services previously rendered. Here the firm's right became clearly established upon signing the withdrawal agreement, which provided in paragraph four for "delivery to the firm" of the fee. Ware himself states in his reply brief, "the record clearly shows that the Partnership's right to the fee was never disputed." Reply Brief of Appellant at 13. Moreover, the record clearly supports that the firm had no uncontested, clearly established right to the fee prior to signing the withdrawal agreement. Ware and Swire continuously concealed their activities from the firm and formed a separate partnership for the very purpose of retaining the fee for themselves. Ware stipulated to the following statement before the Tax Court: "At all times prior to the payment of the finder's fee to the appropriate persons, the fee was held in escrow by Thomas F. Figgis, Esq., in Dublin, Ireland, and was subject to the settlement negotiations of the law firm of RH & H, the petitioner and Swire." Not until the withdrawal agreement was signed in January 1982 did the firm acquire an uncontested right to the fee.

Second, the payment to which the firm has a right must not have been "previously includible in income under the method of accounting used by the partnership." 26 U.S.C. § 751(c). Ware contends that since the firm's 1981 tax return is not even in the record, the Tax Court could not have found

that the fee was not includible in 1981.[1] We do not agree. Whether the fee was actually *included* in the firm's income does not resolve the issue of whether it was properly *includible*. Ware, in turn, urges that the fee was includible because it was both earned by him, and therefore the firm, and paid by the owner of the pharmaceutical plant in 1981. The Supreme Court, however, has recently reaffirmed that "[i]n determining whether a taxpayer enjoys 'complete dominion' over a given sum [so as to make it includible in income] ... [t]he key is whether the taxpayer has some guarantee that he will be allowed to keep the money." *Commissioner v. Indianapolis Power & Light Co.*, —— U.S. ——, 110 S.Ct. 589, 593, 107 L.Ed.2d 591 (1990). Here the firm had no such guarantee in the year 1981, since the fee was paid into escrow and held there throughout 1981.[2] The fee therefore was not properly includible in the firm's 1981 return, even if the firm filed its 1981 taxes on an accrual basis.[3]

■ Ware's second ground of appeal is that even if the Ireland fee were an unrealized receivable of the firm, the $95,306.64 he received would not be "attributable" under section 751(a) to his share of the firm's total unrealized receivables. The basis for this contention is that paragraphs two and five of the withdrawal agreement, read in conjunction with the partnership agreement, apparently designate $24,899 as his share of the firm's unrealized receivables. But paragraphs four and five of the withdrawal agreement plainly allocate half of the total fee, which we have already found to be an unrealized receivable of the firm, to Ware and Swire. As the exception to the payment provision in paragraph two of the agreement makes clear, the $24,899 corresponds to unrealized payments *other* than the Ireland fee. Therefore, we see no reason to suppose the parties to the agreement meant to designate the $24,899 as the exclusive amount attributable to unrealized receivables.

■ Finally, Ware contends that the Commissioner raised the unrealized receivables issue too late for it to have been properly considered by the Tax Court. We hold that unless a theory is precluded by the pleadings, or its late introduction specifically prejudices the opposing party in presenting its case, the Tax Court is not compelled to disregard a theory that is not raised until post-trial briefs. In this we side with the cogent assessment of Justice Stewart, sitting by designation on the Ninth Circuit:

> Without question, the most appropriate times for the Commissioner to inform a taxpayer of the legal theories on which he intends to rely are first in the notice of deficiency and then in the Commissioner's answer in the Tax Court. But the

1. We find curious Ware's insistence that the firm's 1981 tax return is so critical to this case. If the Commissioner had proceeded under his original theory that the $95,306.64 was income directly to Ware and not to the partnership, then the firm's 1981 tax return would have been vital to Ware's defense. Given Ware's insistence that the fee was realizable in 1981, Ware would have tried to have proven that the partnership declared the Ireland fee in its 1981 return. Yet, Ware himself failed to include the return in the record along with the stipulated facts before the Tax Court.

2. Ware contends for the very first time in his reply brief that the funds were not held in escrow, but only by his agent, who could release the funds at will. But Ware stipulated in paragraph forty-nine of the submission before the Tax Court that the fee was held in escrow. Rule 91(e) of the Tax Court's Rules of Practice and Procedure provides that stipulated facts shall be treated as conclusive admissions by the parties. *See* 26 U.S.C. foll. § 7453 (1988).

3. Moreover, the firm's partnership agreement provides for a cash method of accounting. If the firm also used cash basis for payment of taxes, the fee would not have been includible for tax purposes until it was actually or constructively received. *See* 26 C.F.R. § 1.451–1(a) (1989). The fee was not actually received by the firm until 1982 when paid out of escrow. Nor was the fee constructively received by the firm in 1981 because it was held in escrow beyond its control until January 1982. *See* 26 C.F.R. § 1.451–2(a) (1989) ("[I]ncome is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions."); *Reed v. Commissioner*, 723 F.2d 138, 149 (1st Cir.1983) (cash basis taxpayer not required to report income held in bona fide escrow for payment in later tax period and from which no other present beneficial interest is derived); *cf. Indianapolis Power & Light Co.*, 110 S.Ct. at 594 n. 7 (acknowledging Commissioner's concession that security deposits held by power company are not taxable so long as they are placed in escrow).

Commissioner does not necessarily forfeit his right to rely on a theory by failing to raise it at the preferred times. "The basic consideration is whether the taxpayer is surprised and disadvantaged...."

*Stewart v. Commissioner,* 714 F.2d 977, 986 (9th Cir.1983) (citations omitted).

We decline to adopt an ironclad rule that any legal theory surfacing in post-trial briefs may not be considered by the Tax Court. Our decision in *Rodman v. Commissioner,* 542 F.2d 845 (2d Cir.1976), is not to the contrary. There we stated: "It is well settled in the tax court that an issue raised for the first time in briefs after trial is not timely raised." *Id.* at 851. This passage cannot be read as setting forth a hard and fast rule barring consideration of a late issue, because in *Rodman* we in fact went on to evaluate and reject the taxpayer's claim, which was not raised until post-trial briefs, that a $250,000 payment was partly attributable to payment for an option to buy shares of stock. Indeed, we found specific prejudice from the late introduction of the issue in that the record was devoid of evidence to show that the taxpayer's entity even owned all of the shares for which it supposedly granted an option. *See id.* at 850–51.

Here the unrealized receivables issue was properly preserved in the pleadings. It was Ware himself who brought up the issue in paragraph thirteen of his petition to the Tax Court by claiming that part of his share of the settlement, but not the Ireland fee, represented his interest in the firm's unrealized receivables. In his answer, the Commissioner specifically denied Ware's estimate of amounts to be attributed to unrealized receivables.

Moreover, no unfair surprise resulted to Ware from the Commissioner's late emphasis on the unrealized receivables issue. Admittedly, the reports of the revenue agent and the appeals officer, as well as the notice of deficiency, reveal that the Commissioner initially focused on showing that the fee was income to Ware directly and not to the partnership. But the parties' characterization of the issues for trial in the stipulation of facts submitted to the Tax Court framed the issue more broadly: "Whether payment received by petitioner, R. Timmis Ware, for his withdrawal from the law partnership of Rogers Hoge & Hills is characterized as ordinary income or capital gain." Most significantly, section 741 of the Code, which entitles a partner to treat the sale of his partnership interest as capital gain, bears on its face an explicit exception for unrealized receivables under section 751. We are not convinced the unrealized receivable issue was so "new" to an attorney as evidently experienced and enterprising as Ware.

We have considered all the other arguments raised by Ware and find them to be without merit. The judgment of the Tax Court is affirmed.