T.C. Memo. 1996-392


UNITED STATES TAX COURT


PAUL A. RENDINA AND JANET MAE RENDINA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19223-93.                    Filed August 21, 1996.


<u>Joseph P. Alexander</u>, <u>J. Timothy Bender</u>, and <u>David G.
Lambert</u>, for petitioners.

<u>Jeffrey J. Erney</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

BEGHE, <u>Judge</u>:  Respondent determined a deficiency of $35,934
in petitioners' 1988 Federal income tax, and additions to tax of
$1,797 and $8,984, under sections 6653(a)(1) and 6661(a),

respectively.[1]  The deficiency arose from respondent's determination that the distribution to petitioner[2] of two condominium units by Wood Street Apartments, Inc. (WSAI) was a dividend.

We hold that petitioner received the condominium units as a distribution in de facto liquidation of his shares of WSAI, thereby reducing his realized gain by the amount of his basis in the shares and by the amount of certain liabilities to third parties that he assumed, resulting in a lesser deficiency than respondent determined.  We also hold petitioner liable for the additions to tax for negligence under section 6653 and substantial understatement under section 6661, computed on the reduced deficiency.

## FINDINGS OF FACT

Some of the facts have been stipulated, and are so found. The stipulation of facts and attached exhibits are incorporated herein.

When petitioners filed their petition, they resided in Willoughby Hills, Ohio.

---

[1]Unless otherwise identified, section references are to the Internal Revenue Code in effect for 1988, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Janet Mae Rendina has an interest in this case solely by virtue of having filed a joint 1988 Federal income tax return with her husband.  Accordingly, all references to "petitioner" in the singular are to Paul A. Rendina.

Petitioner is a certified public accountant. During the year at issue, he was an owner-shareholder in a certified public accounting firm, Rendina & Vitantonio, Inc.

## Wood Street Apartments, Inc.

In 1986, petitioner and Thomas J. Ackerman (Ackerman), a construction contractor, formed WSAI as a general business corporation under Ohio law, for the purposes of constructing and selling 18 condominium units in Willoughby, Ohio. WSAI was operated as a C corporation. Petitioner and Ackerman each paid WSAI approximately $250 for an equal number of common shares of WSAI.

In 1987 and 1988, WSAI constructed the 18 condominium units, known as "South Wood Condominiums" (South Wood). South Wood consists of two-story townhouses, built in clusters of six units in each of three buildings.

WSAI financed the construction of South Wood primarily with borrowed funds. The funds used by WSAI consisted of a loan from Security Federal Savings and Loan of approximately $740,000, petitioner's deposits in WSAI's checking account of approximately $41,200,[3] and approximately $68,000 in loans from three of

---

[3]Petitioner made three deposits into the account. On Apr. 11, 1987, petitioner deposited $20,200 into the account. On Sept. 22, 1987, petitioner deposited $20,000 into the account, with a notation on the deposit ticket indicating that the deposit was a "loan". On Oct. 6, 1987, petitioner deposited $1,000 into the account.

petitioner's accounting clients:  William and Mary Foss (the Fosses), Vito and Adella Navar (the Navars), and Frank and Benette Posa (the Posas).  The principal amounts of the loans from the Fosses, Navars, and Posas were $53,000, $10,000, and $5,000, respectively.  The loan checks were made to WSAI, and deposited in WSAI's checking account at National City Bank.  WSAI issued promissory notes to  the lenders, providing that interest would be paid at a rate of 12 percent per year.  The maturity date of each of the notes was approximately 1 year after issuance.

On March 9, 1987, the Posas lent $5,000 to WSAI, and received notes as follows:

| Entity | Date | Amount |
|--------|------|--------|
| WSAI | 2/17/87 | $5,000 |
| WSAI | 3/01/88 | 5,000 |
| WSAI[4] | 3/01/89 | 5,000 |

On May 5, 1987, June 8, 1987, and June 29, 1987, the Fosses lent $18,000, $10,000, and $25,000, respectively, to WSAI, and received notes as follows:

| Entity | Date | Amount |
|--------|------|--------|
| WSAI | 4/06/87 | $28,000 |
| WSAI | 6/29/87 | 25,000 |

---

[4]In 1989, petitioner replaced the prior note with a note issued in the name of WSAI, which was by then no longer an active corporation.  When the 1989 notes were typed, petitioner's office inadvertently transcribed the information from the client's old notes.

WSAI[5]            4/06/89         53,000

On February 27, 1987, the Navars lent $10,000 to WSAI, and received the following note:

| Entity | Date | Amount |
|--------|------|--------|
| WSAI | 2/26/87 | $10,000 |

With the exception of one of the Foss notes, each new note reflected a rollover of the obligation on the prior note.  For the months of January, February, March, and April 1989, all interest payments due on the notes to the Fosses, Navars, and Posas were made in the name of WSAI.[6]

In 1988, 16 of the 18 units were sold, two of which were purchased by Ackerman.  The stated purchase prices and dates of purchase for the 16 units were as follows:

| Purchaser | Condo | Purchase Date | Purchase Price |
|-----------|-------|---------------|----------------|
| Thomas J. & Michelle L. Ackerman | Unit A, Bldg. A | 9-16-88 | $65,900[7] |

---

[5]See supra note 4.

[6]The record does not indicate the source of the funds used to make the first 4 months' interest payments in 1989.

[7]Ackerman borrowed $100,000 to purchase the two condominium units, and testified that he performed approximately $15,000 worth of work on each of them.  While the statutory conveyance fee for each of the units was $65.90, representing 1 percent of the purchase price, the way we decide this case does not require a factual determination of how much Ackerman actually paid for each of the units.  We do find that the stated purchase prices for the 14 units purchased by the unrelated parties were the actual purchase prices.

| | | | |
|---|---|---|---|
| Thomas J. & Michelle L. Ackerman | Unit B, Bldg. A | 9-16-88 | $65,900 |
| Geza Bihari | Unit C, Bldg. A | 8-12-88 | $66,900 |
| Larry & Ruth Entis | Unit D, Bldg. A | 8-19-88 | $67,375 |
| Donald C. & Janet T. Matz | Unit E, Bldg. A | 8-04-88 | $69,622 |
| Debra J. Stewart | Unit F, Bldg. A | 8-07-88 | $65,900 |
| Karen Ann Helsel | Unit A, Bldg. B | 2-03-88 | $65,900 |
| Donald L. Smith | Unit C, Bldg. B | 6-29-88 | $66,900 |
| Edward N. & Barbara J. Snyder | Unit D, Bldg. B | 10-14-88 | $67,900 |
| Gia M. Perrico | Unit E, Bldg. B | 12-08-88 | $67,900 |
| Lauren B. & Joseph Wolf | Unit F, Bldg. B | 9-12-88 | $65,900 |
| Ronald S. & Denise A. Rychel | Unit A, Bldg. C | 9-30-88 | $65,900 |
| Gary Ackerman | Unit B, Bldg. C | 10-18-88 | $67,900 |
| Maria L. Podmore | Unit C, Bldg. C | 11-21-88 | $66,900 |
| Sharon L. Spei | Unit D, Bldg. C | 11-30-88 | $66,900 |
| John Viviani & Kimberly M. Ficke | Unit F, Bldg. C | 9-26-88 | $64,900 |

Ackerman and petitioner expected a net profit of approximately $5,000 to $10,000 on each condominium unit sold,

based on a cost estimate of approximately $50,100 per unit. However, WSAI incurred approximately $3,500 to $4,000 in commissions and settlement costs for each condominium. In addition, rebates or building allowances were given to prospective buyers in amounts ranging from $1,500 to $3,500. WSAI also incurred financing costs, unanticipated zoning costs, development fees, $25,000 paid in settlement of a lawsuit by South Wood Condominium Association related to alleged construction defects in South Wood and various misrepresentations, nondisclosures, and failures to perform, and WSAI's actual construction costs.

Toward the end of 1988, two of the 18 units remained unsold. Petitioner and Ackerman orally agreed that WSAI would transfer title to the two remaining condominium units to petitioner in consideration of petitioner's assumption of the Foss, Navar, and Posa notes, and petitioner's discharge of WSAI's "debt" owed to him.

In December 1988, WSAI transferred South Wood's two remaining condominium units to petitioner. Petitioner did not report any income or gain from the receipt of the two condominium units on his 1988 Federal income tax return, but did report a taxable dividend from WSAI in the amount of $90. Although WSAI had filed U.S. corporation income tax returns for the tax years 1986 and 1987, employing the completed contract method of

accounting, and showing no gross receipts, sales, or other income, WSAI filed no U.S. corporation income tax return for 1988, the tax year in which all the condominium units were sold or transferred.

With the transfer of the last two condominium units to petitioner in 1988, WSAI no longer held business assets, and ceased to be a going concern. Upon transfer of all 18 condominium units in 1988, WSAI ceased doing business, but did not formally dissolve. Its charter was revoked in 1990 for nonpayment and nonfiling of Ohio franchise tax returns.

In April 1989, petitioner sold one of the units for $67,900.

Transfer of notes from WSAI to Canterbury Construction Co.

Following his receipt of the last two South Wood condominium units, petitioner gave the Fosses, Navars, and Posas the option of either having their loans repaid, or of having the loan obligations taken over by Canterbury Construction Co. (Canterbury), an S corporation wholly owned by petitioner that is in the business of real estate construction and development. The note holders chose to have Canterbury take over the loan obligations and to continue receiving interest payments. While petitioner did not, in his individual capacity, issue promissory notes to any of the note holders, Canterbury issued new notes to the Fosses, Navars, and Posas sometime after April 1989, and began making interest payments on the notes.

The loans to the Posas and Navars, in the principal amounts of $15,000 and $10,000, respectively, have been paid.  As of the date of filing of the petition, the Fosses still held a note issued by Canterbury on which they were receiving interest payments.

As a result of the earlier lawsuit, WSAI turned its books and records over to the South Wood Estates Condominium Association.  Petitioner has not recovered the books and records of WSAI from the Association.

Corporation tax and transferee issues

On or around March 1, 1994, respondent sent petitioner, as transferee of WSAI, a 30-day letter, with a report of income tax examination and explanation of items, asserting for the taxable year 1988 that WSAI had taxable income of $272,320, resulting from gross receipts of $1,068,000 from the sale of the South Wood condominium units,[8] based on the retail sales prices as determined by the transfer taxes paid, less costs and expenses of $795,680.[9]  The report took the position that WSAI owed 1988 U.S.

---

[8]Respondent excluded the two units transferred to petitioner from the calculation of gross receipts.

[9]Respondent relied on the Cohan rule to provide what respondent regarded as a reasonable allowance for costs and other expenses in lieu of substantiating documents.  See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).  Respondent arrived at the $795,680 figure for costs and expenses by allowing $715,000 of construction loan proceeds (cf. our findings supra p. 3), $70,000 as the cost of the land, and $10,680 as expenses of the
(continued...)

corporation income tax of $89,455, and an addition of $22,364 for failure to file its corporation income tax return.  WSAI's liability for 1988 U.S. corporation income tax and the failure to file addition remains unresolved; respondent had issued no statutory notice of deficiency to WSAI (or to petitioner as transferee) as of the date of issuance of this report.

OPINION

Because WSAI has never filed a 1988 U.S. corporation income tax return, the periods of limitation on assessment of WSAI's 1988 corporation income tax liability and petitioner's transferee liability remain open indefinitely.  In the course of our unsuccessful efforts to lead the parties to a comprehensive settlement or to postpone the submission of this case in order to allow the related corporation tax and transferee liability cases to be perfected and consolidated with this case, we observed to the parties that it would have been preferable, in the interests of efficient case management and sound judicial administration, to bring the cases on together, so that the interrelated questions of corporate taxable income and earnings and profits, which bear on the transferee liability and dividend questions, could have been tried together.[10]  Be that as it may, we decide

---

[9](...continued)
sale of the condominium units.

[10]For an example of a consolidated proceeding dealing with
(continued...)

this case, on its somewhat unsatisfactory record, in a way that enables us to avoid making the earnings and profits/dividend determination, and leave the related corporate taxable income question for another day, if respondent should decide to pursue it.

The substantive tax question before us is whether petitioner's receipt of two condominium units, during the taxable year 1988, was a taxable distribution from WSAI. Respondent determined that petitioner's receipt of the last two units was a dividend in the amount of $135,800 during the taxable year 1988. Petitioner contended that his receipt of the units was not taxable to him because it was offset by discharge of WSAI's debt to him, and his assumption of the Foss, Navar, and Posa notes. Petitioner also maintained that his receipt of the two units could not be a dividend because WSAI had no earnings and profits.

Petitioner, in his reply brief, raised the alternative argument that he received the condominium units in de facto liquidation of WSAI, which would entitle him to use the basis of his WSAI stock to compute his gain on the distribution, if we should determine that his payments into WSAI represented equity rather than debt. Because it appeared to us that this position

―――――――――――

[10](...continued)
related questions of corporation tax and transferee liability, and shareholder gain on liquidation, see Schneider v. Commissioner, 65 T.C. 18 (1975).

might have greater merit than the primary position of either of the parties, we had them address this newly raised issue in supplemental briefs.

I. Lack of Prejudice to Respondent in Addressing Liquidation

Respondent maintains that petitioner's delay in raising the de facto liquidation issue precludes us from addressing it. Respondent relies on Brown v. Commissioner, T.C. Memo. 1979-443, to argue that our consideration of the new issue raised on brief would severely prejudice her case and violate fundamental fairness.

We have allowed petitioner to raise the de facto liquidation issue for two reasons. First, just as respondent is not bound by the theory upon which she relied in determining the deficiency, Blansett v. United States, 283 F.2d 474 (8th Cir. 1960), so petitioner is not precluded from raising a new theory on post-trial brief. Ware v. Commissioner, 906 F.2d 62 (2d Cir. 1990), affg. 92 T.C. 1267 (1989) and T.C. Memo. 1989-165 (declining to adopt an ironclad rule that the Tax Court may not consider a legal theory surfacing in posttrial briefs). Our duty is to consider all the evidence, and in light thereof, decide whether or not petitioner has a deficiency. We are therefore entitled to adopt a new theory of decision, especially where we give both parties the opportunity to argue its merits. See Brooks v. Commissioner, 424 F.2d 116 (5th Cir. 1970), revg. 50 T.C. 927

(1968); Gulf Oil Corp. v. Commissioner, 89 T.C. 1010 (1987), affd. 914 F.2d 396 (3d Cir. 1990).

Where the record contains sufficient facts to permit us to decide a case on an issue that would dispose of it, we shall do so, whether or not the parties have pleaded the issue. Barnette v. Commissioner, T.C. Memo. 1992-595, affd. without published opinion sub nom. Allied Management Corp. v. Commissioner, 41 F.3d 677 (11th Cir. 1994); see Concord Consumers Housing Coop. v. Commissioner, 89 T.C. 105, 126 (1987) (Körner, J., concurring); Park Place, Inc. v. Commissioner, 57 T.C. 767, 768-769 (1972). In Ohio Clover Leaf Dairy Co. v. Commissioner, 8 B.T.A. 1249 (1927), affd. 34 F.2d 1022 (6th Cir. 1929), the Board decided the case on the record presented, as we do here. The parties' failure to plead correctly does not prevent us from deciding this case on what we consider to be the correct application of the law to the facts in the record presented. Barnette v. Commissioner, supra.

Our second reason for allowing petitioner to raise the de facto liquidation issue is that respondent has not been surprised or prejudiced by our addressing it. See Riss v. Commissioner, 56 T.C. 388, 400 (1971), affd. 478 F.2d 1160, affd. sub nom. Commissioner v. Transport Manufacturing & Equip. Co., 478 F.2d 731 (8th Cir. 1973). The rule that a party may not raise a new issue on brief is not absolute; it is founded upon the exercise

of judicial discretion in determining whether considerations of surprise and prejudice require that a party be protected from a belated confrontation that precludes or limits his opportunity to present pertinent evidence.  Ware v. Commissioner, 92 T.C. 1267 (1989), affg. 906 F.2d 62 (2d Cir. 1990).

Respondent's reliance on Brown v. Commissioner, T.C. Memo. 1979-443, is misplaced.  In Brown, the taxpayer was not given notice of the Commissioner's change in theory, and was thus denied the opportunity to prepare an adequate case on the new issue.  Brown is distinguishable from the case at hand.  We have given both petitioner and respondent the same opportunity to make their arguments on the de facto liquidation issue by way of supplemental reply brief.  Thus, neither party is advantaged or disadvantaged.

Respondent maintains that, if petitioner had raised the de facto liquidation issue earlier, respondent would have had the opportunity to provide evidence on: (1) Whether WSAI was formally dissolved; (2) whether the corporate records established a plan by the shareholders to dissolve WSAI; (3) whether WSAI continued to hold title to the land underlying the condominiums, or any other property; (4) whether WSAI continued to manage the common areas of the condominium complex; (5) whether WSAI continued to file tax returns; (6) whether WSAI continued to comply with

statutory corporate formalities; and (7) whether WSAI maintained its corporate identity.

The record adequately addresses these issues, and additional evidence is not needed to enable us to make a fair determination of whether de facto liquidation treatment of WSAI is appropriate. With respect to the observation of corporate and tax formalities, WSAI was not formally dissolved--its charter was revoked for nonfiling of Ohio franchise tax returns and nonpayment of Ohio taxes, and it neither adopted a written plan of liquidation nor filed the notice of corporate dissolution or liquidation required by section 6043(a). The record also shows that WSAI filed no U.S. corporation income tax returns for 1988 or any year thereafter. The record further shows that WSAI no longer held business assets after the sale and distribution of the South Wood units, and that thereafter South Wood was managed by the South Wood Condominium Association. Finally, the record shows that WSAI did maintain its corporate identity at least until its charter was revoked.

Having made findings on the foregoing factual issues, the majority of which facially would tend to favor respondent's position that WSAI was not liquidated in 1988, we see no prejudice to respondent.

II.  De Facto Liquidation

Applying the three-pronged test of Estate of Maguire v. Commissioner, 50 T.C. 130, 140 (1968): (1) Whether there is a manifest intention to liquidate; (2) whether there is a continuing purpose to terminate corporate affairs; and (3) whether the activities of the corporation and its shareholders are directed toward that objective, we are convinced that WSAI and its shareholders displayed a manifest intention to liquidate and continuing purpose to terminate corporate affairs, and that the activities of WSAI and its shareholders were directed to that end.  See Olmsted v. Commissioner, T.C. Memo. 1984-381.

Neither the Code nor the regulations to section 331 define the term "complete liquidation."  However, as we noted in Olmsted v. Commissioner, T.C. Memo. 1984-381, the regulations under section 332 (governing subsidiary liquidations) contain a definition of "complete liquidation" under section 332 that applies equally to section 331:

> A status of liquidation exists when the corporation ceases to be a going concern and its activities are merely for the purpose of winding up its affairs, paying its debts and distributing any remaining balance to its shareholders.  A liquidation may be completed prior to the actual dissolution of the liquidating corporation.  However, legal dissolution of the corporation is not required.  Nor will the mere retention of a nominal amount of assets for the sole purpose of preserving the corporation's legal existence disqualify the transaction.  [Sec. 1.332-2(c), Income Tax Regs.]

Respondent maintains that petitioner never liquidated WSAI. In support of her position, respondent relies on Haley Bros. Constr. Corp. v. Commissioner, 87 T.C. 498, 515-516 (1986). In Haley Bros. Construction Corp., the corporation at issue, Marywood Corp., was not dissolved formally in accordance with State law, and continued to maintain a checking account. We held that there was no liquidation because there was a business purpose for the continued existence of Marywood, which continued to be operated in accordance with that business purpose, holding and selling real property, maintaining a checking account, paying expenses, and filing tax returns. Moreover, the continued corporate existence of Marywood served the purpose of insulating its parent corporation from liabilities on a mortgage and in pending litigation.

In the case at hand, there was no business purpose for WSAI to continue operating. WSAI did not file a corporate tax return for 1988, and, with the sale or distribution of all of the condominium units, WSAI had no further assets of any consequence.

We are unpersuaded by respondent's assertion that, because WSAI continued some activities through the beginning of 1989, it did not liquidate. Complete liquidation can occur despite an extended liquidation process, and several earlier opinions of this court have upheld liquidations despite protracted time frames. See, e.g., Estate of Maguire v. Commissioner, supra;

T.T. Word Supply Co. v. Commissioner, 41 B.T.A. 965 (1940); Olmsted v. Commissioner, supra.  In order for complete liquidation treatment to apply, it is not essential that a formal plan of liquidation be adopted or that the corporation dissolve, as long as there is a manifest intention to liquidate that is carried out.  Genecov v. United States, 412 F.2d 556 (5th Cir. 1969); Stamler v. Commissioner, 145 F.2d 37 (3d Cir. 1944), affg. 45 B.T.A. 37 (1941); Kennemer v. Commissioner, 96 F.2d 177, 178 (5th Cir. 1938), affg. 35 B.T.A. 415 (1937); Olmsted v. Commissioner, supra; Silverman v. Commissioner, T.C. Memo. 1971-143; see Bittker & Eustice, Federal Income Taxation of Corporations & Shareholders, par. 10.02, at 10-9 (6th ed. 1994); 11 Mertens, Law of Federal Income Taxation, sec. 42.06, at 53 (1992 rev.).

Respondent maintains that petitioner has failed to provide the necessary books and records to support his position regarding the liquidation of WSAI.  Although we agree with respondent that there are gaps in the record, we believe that it contains sufficient evidence to sustain our conclusion that WSAI was liquidated in 1988.  The intentions of petitioner and Ackerman to liquidate WSAI at the end of 1988 were apparent from the sales of WSAI's assets, its cessation of business, and the agreement of petitioner and Ackerman that WSAI would distribute the last two condominium units to petitioner, in consideration of petitioner's

assumption of the corporation's liabilities to its lenders and his recovery of his investment out of the balance.  With that final distribution, WSAI held title to no further assets of any substantial consequence.  With the exception of interest payments made through the beginning of 1989,[11] WSAI engaged in no further activities.

Finally, respondent argues that petitioners made no disclosure of any kind on their 1988 individual income tax return regarding the receipt of the two condominium units as a liquidating distribution, as required by section 1.331-1(d), Income Tax Regs, which states:

> In every case in which a shareholder transfers
> stock in exchange for property to the corporation which
> issued such stock, the facts and circumstances shall be
> reported on his return unless the property is part of a
> distribution made pursuant to a corporate resolution
> reciting that the distribution is made in liquidation
> of the corporation and the corporation is completely
> liquidated and dissolved within one year after the
> distribution.  See section 6043 for requirements
> relating to returns by corporations.

Section 1.331-1(d), Income Tax Regs., does not impair our ultimate conclusion that a de facto liquidation did occur during the taxable year 1988 in the case at hand.  Although section 1.331-1(d), Income Tax Regs., appears to complement section 6043 and section 1.6043-1, Income Tax Regs., thereunder,

---

[11]The record contains no evidence of the source of the funds that were apparently used to make interest payments in the name of WSAI.

providing for the filing of Form 966 (Corporate Dissolution or Liquidation) by a corporation that adopts any resolution or plan of liquidation, the filing of Form 966 is not a condition of liquidation treatment under any provision of the Internal Revenue Code.  Maguire v. Commissioner, 222 F.2d 472, 478 (7th Cir. 1955), revg. 21 T.C. 853 (1954); Murphy v. Commissioner, T.C. Memo. 1996-59; see also Fowler Hosiery Co. v. Commissioner, 36 T.C. 201 (1961), affd. 301 F.2d 394 (7th Cir. 1962).  We are satisfied that section 1.331-1(d), Income Tax Regs., like the regulation under section 6043, is directory only.  While compliance with these regulations serves the evidentiary function of supporting the conclusion that a distribution was received in a corporate liquidation, and helps to avoid controversies of the sort we now deal with, we regard them as playing only a facilitating role.  Petitioner's compliance with section 1.331-1(d), Income Tax Regs., is not a condition precedent to our treating the distribution of the condominium units to petitioner as a liquidating distribution.[12]

We are convinced that the agreement of the WSAI shareholders, petitioner and Ackerman, for the distribution of the last two condominium units to petitioner, in consideration of

---

[12]For an example of a mandatory requirement for filing a form in order to obtain specified tax treatment in a "one month" liquidation, see former sec. 333, repealed by sec. 631(e)(3) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2273.

his taking care of the corporate liabilities and recovering his own investment, manifested WSAI's intention to liquidate, and that that intention was carried out in the informal winding-up of WSAI's affairs that followed.

III.  Computation of Gain

Having found that WSAI was liquidated in 1988, we turn to the tax treatment of petitioner's receipt of the condominium units.  Section 331(a) provides that amounts received by a shareholder in complete liquidation of a corporation shall be treated as "full payment in exchange for the stock", considering a liquidating distribution, in effect, as a sale by the shareholder of his stock to the corporation.  Bittker & Eustice, Federal Income Taxation of Corporations & Shareholders, at 10-4, 10-5 (6th ed. 1994); S. Rept. 398, 68th Cong., 1st Sess. 11 (1924), 1939-1 C.B. (pt. 2) 266, 274.  As a result, the shareholder computes gain or loss under section 1001(a) by subtracting the adjusted basis of his stock from the amount realized (the fair market value of the distribution), and reports the difference as capital gain or loss if the stock is a capital asset in his hands.

To compute petitioner's gain, we first look at the value of the condominium units distributed to determine the amount realized.  We then look at whether petitioner's deposits into the WSAI checking account were loans or equity investments;

concluding that they are equity rather than debt, we add them to petitioner's basis in his WSAI stock, rather than treating them as liability offsets to the amount realized. We also look at whether petitioner assumed, or took subject to, WSAI liabilities, because the amount realized under section 1001 on the liquidation exchange is the net value of the distribution, and that amount must be reduced by the amount of liabilities assumed or taken subject to. See Ford v. United States, 160 Ct. Cl. 417, 311 F.2d 951 (1963). We then subtract the basis of petitioner's shares from the amount realized on the distribution to compute his gain.

A. Value of Condominium Units Distributed

Respondent maintains that petitioner received a taxable distribution of $135,800, or the value of the two condominium units received.[13] Petitioner maintains that he gave value equivalent to that of the condominium units. Petitioner's position throughout this proceeding has been that the value of the condominium units was no more than $109,200--the sum of what he argues were the amount of the WSAI liabilities that he assumed and his deposits into the WSAI account.

We disagree with petitioner's estimate of the value of the condominium units received. The average selling price of the

_____

[13]Respondent makes her determination of the value of the condominiums based on the $66,787 average price of the other 16 units sold, as well as the price petitioner received from the sale of one of the units transferred to petitioner.

other 14 condominium units was $66,915.[14]  Four months after the distribution, petitioner sold one of his condominium units for $67,900.

Petitioner has not convinced us that the fair market value of his condominium units should be less than the average selling price of the other units sold, or $66,915.  Thus, we find the fair market value of the condominiums transferred to petitioner to be $133,830.

B.  Basis of WSAI Shares:  Debt v. Equity

Respondent maintains that no loan or other value was given by petitioner to WSAI.  However, the deposit records of National City Bank, where WSAI maintained a checking account, indicate that petitioner deposited $41,200 into WSAI's account.  Because the books and records of WSAI were not made available, we must look to such documentary evidence as bank statements, as well as the testimony of witnesses, in considering whether petitioner gave value to WSAI.  Hagaman v. Commissioner, T.C. Memo. 1987-549.  We are satisfied that petitioner's deposits into the WSAI account constitute value that resulted in cost to be taken into account in determining petitioner's gain on the receipt of the condominium units.

---

[14]We exclude from this calculation the purchase price of Ackerman's condominium units.  See supra note 7.

While the analysis would vary, depending on whether the investment in the corporation were debt or equity, the net tax effect to petitioner would be the same. If petitioner's investment in the corporation were a loan, WSAI's transfer of property to petitioner in satisfaction of the loan would not be governed by section 331 to that extent. This is because the transfer would not be "in payment for" petitioner's stock. In such a case, the corporation merely would be repaying the loan, receiving equal value in exchange for the transfer, resulting in no taxable event for the transferee. See Citizens Bank & Trust Co. v. United States, 217 Ct. Cl. 606, 580 F.2d 442 (1978); J. Hofert Co. v. United States, 23 AFTR 2d 69-845, 69-1 USTC par. 9220 (C.D. Cal. 1969).

If petitioner's investment were equity, petitioner would be entitled to increase his basis in his WSAI shares by the amount of the investment. Under this scenario, petitioner would subtract his basis from the amount of the distribution; if the distribution should exceed petitioner's basis, the excess would be treated as capital gain from sale of the stock.

In Donisi v. Commissioner, 405 F.2d 481, 483 (6th Cir. 1968), affg. T.C. Memo. 1967-62, the court noted that, although the intention of the parties weighs heavily in determining whether advances are loans, proof of such intent is to be found in "the arrangements concerning the normal security, interest and

repayment or efforts to secure the same." In Austin Village, Inc. v. United States, 432 F.2d 741, 745 (6th Cir. 1970), the court relied on the fact that there was no unconditional promise to repay the loans, no fixed schedule of payments, and no security given for issuance of the loans.

In the case at hand, none of the factors are present that would tend to show that petitioner reasonably expected WSAI to repay the "loan" in accordance with terms in line with those generally prevailing in the business community. See Nassau Lens Co. v. Commissioner, 308 F.2d 39 (2d Cir. 1962), remanding 35 T.C. 268 (1960). Moreover, no interest payments to petitioner were made or provided for. See Texas Farm Bureau v. United States, 725 F.2d 307, 313-314 (5th Cir. 1984). If petitioner had been a true lender, he would have provided for interest payments. Curry v. United States, 396 F.2d 630, 634 (5th Cir. 1968).

We find that petitioner's $41,200 of deposits into the WSAI checking account was a contribution to the capital of WSAI. Because petitioner was a shareholder of WSAI, his $41,200 of contributions to capital is reflected in an increased basis for his WSAI stock. Sec. 1.118-1, Income Tax Regs. Thus, petitioner's basis in his WSAI stock was $41,450.[15]

---

[15]At trial, respondent produced copies of WSAI checks to petitioner and to Camelot Court Development, Inc., and Camelot Court Development, Inc. II, in the amounts of $5,000, $3,697, and $57,703, respectively (Petitioner has a 45-percent interest in
(continued...)

_____

Petitioner's amount realized from the distribution of the condominium units should be reduced by the amount of the corporation's liabilities to the Posas, Fosses, and Navars that petitioner agreed to assume, and for whose discharge he made the necessary arrangements.  Thus, after subtracting the assumed liabilities of $68,000 from the $92,380 gain ($133,830 amount realized minus $41,450 adjusted basis), petitioner's realized capital gain is $24,380.

IV.  Additions

A.  Section 6653(a) negligence addition

Respondent determined that petitioner is liable for an addition to tax for negligence pursuant to section 6653(a). Section 6653(a)(1) imposes an addition to tax of 5 percent of the portion of the underpayment to which section 6653 applies.

_____

[15](...continued)
Camelot Court Development, Inc., and a 50-percent interest in Camelot Court Development, Inc. II).  Petitioner objected to their introduction into evidence, because they had not been submitted to petitioner prior to trial, contrary to our Standing Pretrial Order, for incorporation in the stipulation of facts under Rule 91.  Respondent did not request leave to amend her answer to assert an additional deficiency for these amounts, and did not make any argument on brief that we should treat them as taxable distributions or as reductions in the basis of petitioner's stock.  Respondent maintained at trial that the documents were offered for impeachment purposes only, under Fed. R. Evid. 607, as an exception to Rule 91 and the Standing Pretrial Order, and we so regard them.

Section 6653(a)(3) defines "negligence" as including any failure to make a reasonable attempt to comply with the provisions of the Code. Petitioner has the burden of proving that respondent's determination of the addition to tax for negligence is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under similar circumstances. Anderson v. Commissioner, 62 F.3d 1266, 1271 (10th Cir. 1995), affg. T.C. Memo. 1993-607; Norgaard v. Commissioner, 939 F.2d 874, 880 (9th Cir. 1991), affg. in part and revg. in part on other grounds T.C. Memo. 1989-390. A taxpayer's failure to maintain adequate books and records is sufficient to establish negligence. Sec. 6001; Zafiratos v. Commissioner, T.C. Memo. 1992-135, affd. without published opinion 993 F.2d 880 (3d Cir. 1993); Moran v. Commissioner, T.C. Memo. 1981-352.

Petitioner has been a certified public accountant for many years and was aware of the requirement that complete and accurate books and records be maintained with respect to WSAI's activities and any distributions from WSAI to petitioner. As an accountant, petitioner was also aware of his requirement to verify and document the value of the condominium units distributed to him. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973); D'Arcangelo v. Commissioner, T.C. Memo. 1994-572. A

careful consideration of the evidence, including the selling price of the other South Wood condominiums and petitioner's sale price of his own South Wood Condominium around the time for filing his 1988 return, should have alerted him, as an accountant, to the appropriate values for the condominium units distributed.  See deRochemont v. Commissioner, T.C. Memo. 1991-600.

We sustain respondent's determination that petitioner was negligent with respect to the underpayment.

B.  Section 6661 substantial understatement addition

Respondent determined that petitioner is liable for an addition to tax under section 6661 for substantial understatement.  This addition applies when the understatement of income tax exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year, or (2) $5,000.  Sec. 6661(b)(1).  The understatement for purposes of this addition is reduced where there is substantial authority for the tax treatment of any item or if there was adequate disclosure, in or attached to the return, of the relevant facts affecting any item.  Sec. 6661(b)(2)(B).

Petitioner made no disclosure of the distribution on his individual return for 1988 and made no argument against imposition of this addition.  Since the amount of petitioner's

understatement for the 1988 taxable year is substantial, we sustain respondent's determination on this issue.

<u>Decision will be entered</u>

<u>under Rule 155</u>.
